The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Thank you very much, Ms. Trice. We call case number 2019-30440, Alvarado et al. versus BP et al.  Your Honor, I'm Douglas Shredder. I represent the appellant, Sergio Garcia. The crux of this argument comes down to two issues. Number one, as a maritime seaman, I am Douglas Shredder and I am representing Sergio Alvarado in this appeal. The crux of the matter comes down to two issues. Number one, since Mr. Alvarado is a seaman, did he file his suit timely, which was two months before the statute of limitations ran? As we know, the admiralty and the seaman statutes are sacrosanct. In fact, in the Butler case, they talk about not changing the statute of limitations. That has to do with going to forum shopping to a state court. However, I think it's pretty much analogous here that you're a ward of the court when you're a seaman and he did file it timely. Number two, sidestepping that issue, which is very strong, when you look at what happens in this case, you'd have to look at the Pioneer case and the danger of prejudice to the opposing party. There was no prejudice whatsoever to the opposing party. The case has been stayed for 10 years and all of his motions and all of his answers to any of the questions or. Case management orders have been obeyed by Mr. Alvarado since the beginning. They have his medicals. He filed a short form in 2011. He showed his medicals, showed them he was a seaman. In 2013, he filed the lawsuit. In 2017, in 2019, he complied with the court's orders. And in 2019, even though he was thrown out, we still filed for his. We still gave them their medical records, which was a PT 68. So he had bent over backwards to apply with the court. He didn't. He thought he did apply with the court. In fact, when we filed in 2013, we were asked by the court two months later to refile it on a technical issue. We did refile it. Counsel, your time is expired. I'm two minutes, but I do have a question for you. What is your explanation of why in November 21st, 2012, your client's name is not on the list of the timely and valid opt outs? Well, your honor, that's that was a lawyer. Free shirts had had the case there and it was it was mailed to the to the man's house. And as they don't speak English there and his wife thought it was junk mail and kept throwing it in. And we have case law that shows the one action does not constitute a pattern of of deliberate tardiness or not doing enough. And he's Spanish. He saw it. He thought of the junk mail. By the time we filed out, it was too late. I don't think you see any kind of arbitrariness or meanness or not trying to go in. In the Mason case, they're trying to opt in to the into the medical settlement. We're not trying to opt in. We're opted out. And we've been following everything except for six years. We just got the rug pulled out from us. OK, I think we have your argument and your time has expired. Mr. Smith. OK. OK. No, that's OK. Thank you very much. OK, we'll hear from the next counsel. May it please the court. My name is Alistair McKenzie. I represent the appellant, Sandra Imes. Very simply, your honors, compared to all of the BP appeal cases that have come before this panel before this court prior to. This is a case that best exemplifies exactly what has gone wrong here. Unlike the other cases, this is a pure discovery management kind of order, not a docket management order. What I mean by that is, for instance, in the Park National case, the arguments put forth there are identical to my arguments, except for the fact that PTO 65 is different from PTO 66. PTO 65 was filed with the court. PTO 66 was not filed with the court. PTO 66 only sought discovery based information, including my client's name, information, where she worked, who she worked for, what her injuries were, what her treatment or etc. Information, 90 percent of which she had provided in 2011, which she had provided again in a short form, joined her later and again in 2017 in a signed, sworn and written statement. So not only has she provided this information, but the information sought was purely discovery. And it was information solely to the benefit of the defendant and not to the court. Why did your client not file it late like the counsel for the other plaintiffs that we have here today? They filed their materials, but they filed them late. Your client didn't file them at all. My client's case was dismissed with prejudice by the court, Your Honor. So I'm unclear as to how I'm supposed to file something when there's no longer any jurisdiction and I no longer have an active case. As part of a motion to reconsideration, attach the correct documentation and beg for more time or something. So you just didn't. So it's true that your client's materials are not complete before the court right now, right? That's correct, Your Honor. And the reason that they're not complete before the court is because my case was dismissed with prejudice. And I don't know what giving those documents to the court after the fact would do to to save any kind of face. The simple fact of the matter is, Your Honor, my client was never given the opportunity to do that. You know, to to hold my client responsible for consummation as conduct or not doing something after something was dismissed with prejudice that fails to make sense to me. I would point out that that, you know, the way this was set up is that my client's case was stayed by the court, by the district court. Their case was also never an issue. There was no answer. There was no motion to dismiss. And we had an order to stay in my client's individual case. There was also no single order issued into that case by the district court saying, hey, you need to pay attention to the 2000 docket entries that are going on in a centralized MDL case. And find which one is the needle in the haystack that applies to your case so that we're not going to just ambush you and dismiss you with prejudice. Are those 2000 docket entries all orders, though? I would think the word order gets your attention a little more than, you know, motion to substitute counsel does. Yes, Your Honor. I mean, it should. You know, there were still 2000 docket entries, Your Honor. You know, as far as I knew, I thought that the action was going to be in my client's individual case. This is the very first MDL case I had been involved in. And I inherited this case from my father, who deceased about six months prior to this, a little prior to the filing of the B3 pleading bundle. So unbeknownst to me, I'm thrown into an MDL case where I have done everything I can to research all the rules of civil procedure, where I have read the court's orders. I have signed up for file and serve express. I have followed all of the rules of civil procedure. I looked under the rules for complex procedure. None of these rules said that this is something that you have to do. Simply put, there was nothing in writing that gave me as a practicing lawyer any notice of how this inside baseball of multi-district litigation is played. And so I do take responsibility for not having discovered that I needed to speak to some plaintiff's steering committee, which I had just discovered what they were, and not discovered that there was something called liaison counsel and spoken to them. And yet this court sees fit to just go ahead and dismiss with prejudice all of these cases. I do take full responsibility. This is the largest professional failure of my life, and it is one that will never occur again. I have never had a case dismissed. I have never ignored a court order. I have never done anything. And simply put, if there were clear-cut rules in place that were understandable by an attorney who had been practicing law for about five, six years at this point in time, I would have complied with them. If the court had simply given my client an opportunity by finding me the wrongful party and sanctioning me and giving my client ten days to comply once the case had been dismissed, or ten days to comply before dismissing the case with prejudice, by notifying us in the individual case which had a stay in place and a case which was not at issue, this would have been taken care of. Your time has expired. I understand this is very frustrating, and it is a – I read in one of your pleadings, one of the things that they said, this is a lawyer's nightmare, that this could happen to any lawyer, and that this is something that keeps lawyers up at night. And I understand that you have strong views on this, but you had your time. Yes, Your Honor. And so we need to move on to the next lawyer, unless some other judge has a question for you. And I see none, so thank you very much, Mr. McKenzie. Mr. Brown, are you next? We can't hear you. There you go. Yes, Your Honor. May I please the court? I would like to address how these three appellants' cases are different than the other cases you've heard since you've already had four dismissals before. This circuit for decades has reversed district courts that have not followed the three stringent safeguards put in place to protect plaintiffs from having their cases tossed out of court. First, there has to be a clear record of contumacious conduct, or second, it has to be delay causing, and third, dismissal with prejudice. The ultimate sanction has to be necessary because no lesser sanction would work. Of particular relevance, this court has emphasized that the MDL judge has to follow these same standards. As the MDL court explained in the opioids case in April of this year in that MDL, MDL judges still have to follow the federal rules, and each individual case in an MDL has to be treated as an individual case. Now, what I'd like to do is go through how this case is different on each of the three elements, but I'm going to focus mainly on the delay element. Before I do, I want to talk about why PTO 66 is different than the prior cases. PTO 60 in the Barrera case, PTO 63 in the Graham case, and PTO 65 in the Park National case were different because they were requesting information for the benefit of the court, for the court to manage the cases. Therefore, that information was to be filed with the court. PTO 66, in contrast, was not for the benefit of the court. It was information that was filed or served on BP itself, not on the court. That's because it was a discovery, and just like interrogatories, these were essentially 48 interrogatories. They were not filed. There's one exception. That is in the Cepeda case. Cepeda case was PTO 64, and PTO 64 did not require a filing with the court. It required something to be sent just to BP. But if you look at the briefs in the Cepeda case, specifically pages 25 and 26 of BP's brief in that case, they said that order is in place for a specific reason. What was it? It was to determine whether these plaintiffs in that case had a general maritime log claim under Robbins Dry Dock. In other words, it was asking questions to ascertain whether they were commercial fishermen or whether their property actually had physical damage to it. If it didn't, they had a legal defense they could assert, and so that's why that order is very different than this type of discovery order. I'd like to go through briefly contemnation of this, the first safeguard. In every other case, the plaintiff's attorney either didn't register or simply didn't follow the court orders, not once, not twice, but on multiple occasions. This case is different. The plaintiff's attorney here did sign up. He simply missed one. Why did he miss one? The judges have asked about that in prior oral arguments. How many are there? How does this happen? There were literally over 10,000 emails that would have come across Mr. Hurd's desk. How do I get that? Well, if you look at the docket entry from the day that Mr. Valdivieso's lawsuit was first transferred to this court, which was exactly eight years ago today, and then you look at the docket sheet for the day of the PTO 66, and you look at the number of documents filed in between, there's over 10,000 documents. Each of those is emailed to the parties. Now, Judge Haynes said, well, you don't look at everyone the same way. You're looking for orders. No doubt about it. No doubt about it. But this is like the case of the lawyer back when I was a young lawyer who's getting a whole bunch of letters on their desk, and they just miss one. Unfortunately, it's the most critical one. It's one from a court. But he cured his mistake. He begged for forgiveness when he responded to the Joe Cause order. Additionally, the conduct here was not repetitive, which is a requirement from the circuit. All right, I said I'd spend most of my time on delay. If you'll allow me to be a little bit tedious here, the Park National case did not find a delay, but it did talk about delay in the sanctions section. But Park National was very different. As was said earlier, Park National was an order that was sending the cases to mediation. Mr. Hicks stood up in front of this court in that case and said this is going to cause a delay. Why? Because, first of all, the information was for the mediator and the court. The court took that information, and Mr. Hicks explained this, and then crafted PTO 67 from that information and then sent them to mediation. And that mediation process was totally complete by the time of oral argument, according to Mr. Hicks. Therefore, that would have caused a delay. These interrogatories would not. In this case, nothing's happened. All these other cases are just still sitting there, right? They've just been called. They're still sitting there. The only thing that happened was the calling. They're still sitting there, except one thing has happened. There's been four months after our appeal. The judge issued what's called PTO 68, which ordered the parties to provide copies of their medical records and a medical release. That'll be very easy for us to do if we're reinstated in the case. In fact, I'm already working on that, hoping that it'll be important so we can comply with that very easily. In Ms. Jorgen's case, how she missed the deadline also later because of the situation with her spouse, couldn't the court, because the lawyer knew, though, before that deadline, the October deadline, couldn't the lawyer have filed something in the interim saying, I'm waiting on this other thing for my client, and it's coming, but she's had a death issue or this serious illness? On October 11th, he served something on opposing counsel that inadvertently was not filed with the court. This is what I call the dual filing mistake. But he did timely respond on October 11th. Could he have responded earlier? I'm sure that maybe it's possible he could have. He did file by October 11th, even in that case. He did file by October 11th. But to be clear, Claire. No, not filed. He put it to the opposing counsel, but the person didn't enter it correctly to go to the court. Right, and I put it in the record through a motion asking to take judicial notice of it. I mean, you do know that Park National made a lot of the same arguments you're making, that nothing was happening, everything stayed, blah, blah, blah. And so part of the problem is, of course, how can the judge move forward if people aren't complying with the original order? So this notion that, oh, well, now we have the PTO 67. I mean, I don't know that we knew that at the outset of Park National's failure. I'm not saying we, the judges, didn't know. I'm saying when you fail to comply, you don't know what the judge is trying to do. We just know this is a massive case. So, I mean, I appreciate that now you can look back, but I'm not sure that was the arguments made in Park National sound a whole lot like the arguments made here. Well, they're similar, but there's some important differences. The differences between that order says this is for the court to get this mediation process going. That was in that court order, and that is a material difference. Secondly, here, these things were filed by October 11th, and so the purpose for them was to get basically interrogatory answers to BP. They had them, and that was different than in Park National. Those were not that type of thing. They were for the mediation process. You found in Barrera that there was delay, but in there, there was 1,510 plaintiffs. More important than the number was the fact that they never filed that information in response to the various opportunities that you noted in the opinion. The Graham case also, you found that the 800 Lindsay plaintiffs who didn't respond, that they would delay the case. But there, Mr. Hicks argued this more than doubles the number of plaintiffs who are going to be in the case. This is very different. It's only three. More important than that is the plaintiffs there never responded, ever. We did. In contrast, the MECO plaintiffs you did find would not delay the case. There, there were 17 plaintiffs, and there, they had filed something in response to the court's order dismissing the case, filing these lawsuits. Here, we responded to the show cause, so I think we're similar to them in that regard. The last case on delay is Cepeda. There, there were 337 fishermen, and if you look at the briefs in that case, you'll see that those 337 Mexican fishermen never responded to the court order, never provided the information the court wanted. That's the critical difference. Also note quickly, the delay must be purposeful, intentional. There's no evidence of that here. And finally, how long does a delay have to be? This court in the Milan opinion said it has to be, quote, significant, and the court gave a little formula for that. It has to be more than a few months, more than a few months. That takes me to my third safeguard. I can address that, I think, in a minute or less, but it's at the court's pleasure as to why this is different than Graham where the court said a warning isn't enough. Here, there's a sanction of what I call warning plus. May I explain the warning plus, Your Honor? Yes. Warning plus would constitute five things. First is what the court is now doing in its PTO since then. In PTO 68, the first sanction was you come all the way here to Louisiana, look me in the eye, and explain why. And anyone who's ever seen a federal judge chew out somebody knows that could be a very real sanction. Number two, defense fees. Award the fees not just for preparing the response, but the time for BP and expense for BP to attend the hearing. And then third and most importantly, the order should be conditional. It should be conditional on the lawyer having to provide his client with a copy of the transcript showing him exactly what happened and why. Conditional on the lawyer providing something the court showing, I've fixed this. I've now got something else in place, a backup system, so this won't happen again. Mr. Brown, you need to wrap it up. And then the last thing, the warning plus would be that it should say you won't have to meet the standard again. We agree, Judge. We don't have to comply with that standard again, the three safeguards. Thank you, Your Honor. Thank you. Mr. Hicks? Thank you, Your Honor. And may it please the court, George Hicks for the BP appellees. Judge Barbier is overseeing an MDL that this court has appropriately called epic, gargantuan and extraordinarily complex. Judge Barbier did not abuse his substantial discretion in concluding that the appellants here are not entitled to further proceed in this MDL. Four of the five appellants here indisputably did not comply with both PTO 66 and the show cause order, which required. Mr. Hicks? Yes. What case says that you can dismiss with prejudice where there is a late compliance? What case stands for late compliance equals dismissal with prejudice? Your Honor, I would point you to this court's decision in the PTO 65 decision. And as Judge Haynes, I think correctly pointed out, virtually every one of the arguments that the plaintiffs are making in this case was made by the plaintiffs in that case, whether it's the park national plaintiffs or the destined plaintiffs. So in the PTO 65 decision, this court held that the failure to comply with both a pretrial order and a show cause order in this large and complex MDL justifies dismissal with prejudice. But there was not a failure to comply with the show cause. Even if you complied with the show cause by saying it was all the lawyer's fault and here's the information, it didn't matter. The show cause itself, if there was lawyer error here, didn't alleviate anything. So it's only the one order that was not complied with. The show cause was complied with by some of these people. With all respect, Judge Elrod, I disagree that the court's show cause order. I want to go back first to PTO 66 and the show cause or PTO 66 at 5314 of the record says plaintiffs who don't comply with PTO 66 may be required to show cause to this court why they didn't comply. It says may. I'm sorry. It says may and it says to the court. Sure. And then in the PTO 66 show cause order itself on 5361 says show cause responses should be filed in the MDL master docket, not the individual case. And there's a reason for that. A show cause order, which is one of the most serious orders that a court can issue, is intended for the party to give an explanation to the court for its noncompliance. And there's no dispute here that they didn't provide that. And Judge Barbier noted that in his decision, he didn't just say that these PSOCs had been three and a half months filed late. He noted that these particular plaintiffs did not file their show cause order with the court. And so how you know, it's not surprising that he dismissed them with prejudice, you know, for a miracle issue with sending it to the opposing counsel and not to the court that you may believe constitutes not complying with the order. Is that correct? When I show cause the question, that's right. They did not properly hit the right button to send it to the court and they only send it to opposing counsel. Right. Well, when they only sent it to opposing counsel and not with the court. Am I correct, sir? Yes, that is correct. That they did not comply with the show cause order. You can continue your argument now. Sure. But even if you don't want to accept that they didn't comply with the show cause order by not actually giving their response to the show cause order to the district court, and I'm not aware of any case where this court has simply overlooked noncompliance with a show cause order. Which of the whole point being that you are to give an explanation to the court in this, in PTO 65, the park national plane just made the exact same argument that they inadvertently failed to give the show cause response to the court. And this court didn't accept it. But even if you look past that and you accept that they somehow complied with the show cause order simply by serving up on opposing counsel. And, and frankly, I think that if I were ever subject to a show cause order by a court and I only served it on opposing counsel, but didn't actually give my explanation to the court. Certainly I don't think I would have complied with the order. And I think the court would be justified in dismissing my case because it never got my explanation. But even if you don't agree with that, that just put these plaintiffs in the same position as the destined plaintiffs in the PTO 65 decision, the destined plaintiffs also didn't comply with the first order PTO 65. And then they, they say they, you know, they did comply with the show cause order, which we don't think happened here, but the court still didn't accept that their non-compliance was for the sort of good faith mistake that was made in the Graham case. And of course, in the Graham case, the D'Amico plaintiffs are very materially dissimilarly situated from these plaintiffs here on four different grounds. Number one, the D'Amico plaintiffs in that case had one chance to comply before dismissal. Here, there wasn't intervening show cause order. And of course the appellants we think did not comply with either. Number two, the D'Amico plaintiffs in Graham at least timely filed something in response to PTO 63. The plaintiffs here did nothing. Number three, the D'Amico plaintiffs only partially complied with PTO 63 because they got bad advice from the plaintiff's steering committee. Here we have nothing like that. They did not either seek out or rely on any guidance from anyone. And fourth, in the Graham case, the D'Amico plaintiffs promptly filed the missing information within days. Here, the missing information was at least three and a half months late. And the show cause orders were never actually filed with the court until about five months after the show cause order from Judge Barbier. So even if you want to overlook the noncompliance with Judge Barbier's show cause order, and I want to make clear, I really dispute that they did not file this. I mean, at the reply of Mr. Valdivieso and Gordney at 11 and 12, they say that they violated the show cause order. They just say there's no legal significance to it. But then on the very same page, at page 11, they say, willful disobedience requires noncompliance on multiple occasions. And again, I don't see how not actually giving a show cause response to a court that asks for the explanation for why you didn't comply with the previous order doesn't constitute noncompliance. That's the whole point of a show cause order. Isn't it late compliance, though? I mean, not to beat the horse, because they did get it several months later when they realized that the court didn't have it and it was not filed correctly. Well, Your Honor, I mean. It's not non, it's late. They filed the response to the show cause order. And this is for three of the four claims. The Zions never did. But three of them. I mean, I don't think filing your response to a show cause order three and a half months after a district court orders of response is really in any way complying in any sense. And now there are actually two. How soon was it after they became aware that it had not been properly filed on the docket that they corrected the mistake? I believe that I don't think the record actually shows when they became aware of the fact that they didn't actually file a show cause response. But I can say that Mr. Valdivieso and Gordney didn't file anything along those lines until February. And that's about four months after the deadline. Ms. Dorgan didn't file anything until May. Counsel, can I ask you a question? Do you believe that we have established kind of a separate precedent in our BP cases that doesn't require lesser sanctions? That is kind of we have a separate track for all these because we're recognizing this grand MDL of gargantuan size, as you pointed out. Or do you believe that we are requiring lesser sanctions still? And if so, what were the lesser sanctions that were imposed in this case? Your Honor, I don't think that you've sort of excised the lesser sanctions requirements. But I think that this court has repeatedly in Barrera-Graham PTO 65 decision has said that no lesser sanctions would suffice, given the complexity and given the Herculean efforts by Judge Barbier to process and prosecute these claims. And not just for BP's benefit, but for the benefit of the hundreds of plaintiffs who did comply with these orders. But isn't that a special rule? Because normally we would say that a lesser sanction not only suffices, but it must be done first. We send cases back all the time where the court didn't do lesser sanctions, and we say you must first do that. We may get here, but you must first do that. So the fact that we're kind of saying this is too big to fail in some way, and so therefore we're going to say it's not going to suffice, is that's kind of a separate jurisprudence in these cases. That may be the case, and we have to follow our case law. So I'm just trying to figure that out. Sure. Well, I agree that you do have to follow your case law, and your case law in these types of appeals out of the Deepwater Horizon MDL has consistently said that no lesser sanction than dismissal with prejudice would suffice because of the many problems that come from it. You just said back in January, timely responses to PTOs are necessary for long pending cases to move toward resolution. But would that have been a good enough reason in any other regular case? Well, I agree that MDLs are different than any old regular case with one plaintiff, and that's what this court has said over and over, and that's why greater discretion than even just the already capacious discretion given to judges for docket management is even greater in the MDL context. I mean, I'm not sort of just making that up. That's what this court has said over and over. I mean, the rule on the lesser sanction is not that you have to have a lesser sanction in every case, but rather that you have to have a lesser sanction if that would be adequate. So the question always is whether the lesser sanction is adequate, right? And that was the issue in Park National that I think maybe Mr. Brown's brief quoted me as asking the question about, well, what is a lesser sanction that would be adequate in the Park National, and the lawyers didn't really have one. So that was the problem. There really wasn't one, and so there we are. And I think that is the law. If the lesser sanction wouldn't work, if what was being sanctioned was the lawyer took all the documents in the case and burned them up in their backyard, I'm not sure we'd say you needed a lesser sanction in that case because it wouldn't be adequate. So, again, you have to look at the particular case for the adequacy, and that's the question here. So why don't you address why in this case a lesser sanction would not be adequate? Sure. Well, I would first of all point out that this court has consistently said that an order to show cause is a lesser sanction, and that's what happened here. There was an order to show cause, which is different from the Graham case in PTO 63. There wasn't even an order to show cause there. Here there was. Second, Judge Barbier has this court's decisions in hand when he's determining these dismissals with prejudice, and so he's being told by this court what he needs to consider as lesser sanctions. And this court has consistently said that things like another warning or a fine to the lawyer or something along those lines is not going to be adequate incentive for parties and their attorneys to comply with pretrial orders that are necessary to keep this moving. Can you address why the four things that Mr. Brown specifically argued as part of that case law are not adequate in this case? Your Honor, I'm trying to remember the exact four things that he mentioned, and as to which case, PTO 65? A warning, an explanation. No, this was 66. A warning to have to go before the court and get dressed down, defense fees, and a conditional something or other. Sure. Well, first of all, these were all arguments that were made in PTO 65. I mean, perhaps the plaintiffs there didn't say in heck verba you could have fined the lawyers, but it was on the table, and the court was thinking about it when it decided there was no lesser sanction. But also a warning, that's what a show cause order is. And a fine to the attorneys, again, I don't think that that would be adequate incentive to keep people in line. All it means is that you will have further noncompliance, and that's creating the tardy processing and progression of these cases. And I think you just have to look in this case. Actually, isn't it making Judge Barbier hold a hearing to shout at the attorneys more of a sanction on Judge Barbier, who then has to take that kind of time when he's got hundreds of other things going on in this very case? Well, that's absolutely right, Judge Haynes, but that also goes for everything else he has to do when plaintiffs don't comply with these orders. He has to entertain dozens, if not scores, of pleadings from admittedly noncompliant plaintiffs. Then he has to entertain dozens, if not scores, of pleadings to hit responses to his show cause order, when, of course, they're actually filed with him, which they weren't here. Then he has to deal with motions for reconsideration. Then he has to deal with second and third motions for reconsideration here, all because plaintiffs simply won't comply with what are very clear, unambiguous orders. And to be very candid, I think there's a little bit of just not implausibility, but maybe even impertinence to suggest that after repeatedly failing to comply with Judge Barbier's orders, PTO 66, and a very clear show cause order that said, like all show cause orders, that the response and your explanation needs to be filed with me, the judge, and they didn't do that. I think it borders on the impertinence to suggest that for plaintiffs to suggest that somehow this is Judge Barbier's fault that we're in this situation now. I just don't think that that is consistent with what this court has said in many of these appeals with the discretion that is given to an MDL judge in general, much less this particular epic and gargantuan MDL. And I think that this case really is on all fours with the PTO 65 decision. In fact, Ms. Iams, at least she's honest about it. She says in her reply brief, this case has quote, the identical posture and quote, identical and applicable legal arguments as the park national plaintiffs in PTO 65. Well, she's right. And our national plaintiffs did not prevail, but Ms. Iams is essentially in the exact same position as these other plaintiffs from the linear law firm. None of them filed with PTO 66. None of them complied with the show cause order multiple violations of court orders. As this court said in PTO 65 justifies dismissal with prejudice. And yes, yes, you want to address this client because that client's in a little bit of a different circumstance. That was the situation. Well, I filed before the statute of limitations, even though it was after the opt out date. Absolutely. Judge Haynes, Mr. Alvarado. Essentially, we think that his his situation is foreclosed by your decision in the Mason case, which he essentially ignores and tries to distinguish on the grounds that there was supposedly inadequate briefing. But if you go back and look at that decision, ignore it, because I thought he even mentioned it in his brief discussion here as well as his brief. He did not ignore it. He distinguishes it. It's not distinguishable. I will tell you why it's not distinguishable, which is that the sole grounds on which he distinguishes Mason is that supposedly the parties in that case hadn't adequately briefed the issues that apply here. Number one, I don't even on its face. I don't think that's a basis for distinguishing a published extensive decision. But number two, if you go back and look at the Mason decision, that footnote that he's referring to is addressing a different a different aspect, a different issue. It's not addressing the particular issues here, which we think forecloses claim number one, that there was adequate notice and that number two, his complaint that was filed five months after the opt out deadline does not constitute an implicit opt out. So in the under the notice factor, the court said in Mason, it noted that the notice of the economic of the medical settlement had already been upheld as sufficient under Rule 23 and due process. And this court has also already said that that when a plaintiff receives notice at his or her mailing address, that constitutes actual notice that is sufficient. And then if you move to the, the question of the complaints being an opt out, then you have the situation where this court said in Mason that anything filed after the opt out deadline, we just don't even consider when it, when it comes to the matter of determining whether it was an implicit opt out. And the reason for that is certainly just as applicable here as it was in Mason, which is that Judge Barbier, who is again dealing with thousands, tens of thousands, hundreds of thousands of cases, shouldn't have to divine from a single complaint that someone was actually trying to opt out. And so, you know, for those reasons, we think that Mr. Alvarado's claim is foreclosed. And so you let me ask you a question, sir. Yes. Are you saying that under our existing case law, that they were private, that the conduct, they contaminate controversious in order to support a dismissal with prejudice does not obtain an MDL. Oh, not at all. Your honor that there, there can, if I understand your question correctly, you still have to show if you're looking at dismissal, dismissal with prejudice. And I want to just put a pin in it that we think that the only order that can be reviewed here is the order denying reconsideration because there was no argument made to the court before the actual dismissal. But if you are looking at dismissal of prejudice, there does need to be record of delay or contumacious conduct along with no lesser sanction. And as the PTO 65 decision made very clear for the Park National Plaintiffs and for the Destin Plaintiffs. You added in, you added into that prejudicial delay. No, no, there's no. Your honor, there's no prejudice required. It's not prejudicial delay. It's either. Well, I didn't suggest there was a thought. I asked you about contumacious conduct and you replied by saying an add on to that about prejudicial delay. That is, that may be wholly innocent, but it prejudice the prosecution of the MDL cases. And that's what I'm trying to focus on is, is that in the larger dimension, we are struggling with MDL cases and their fit in the cosmos. So there are large criticisms out there of academic studies. The court itself is struggling with what, how, how, how the rules to be applied here and to what, how far do we go to justify the practical necessity of efficiency, which are very powerful arguments. Yes. And if I may, I give an answer before I finish. Yes. Sure. Your honor, what this court has said in multiple decisions, including published decisions addressing this particular MDL, is that if you're looking at dismissal, you're looking at an order dismissing with prejudice again, we don't even think you get to that here. But if you are, then there has to be a record of delay or contumacious conduct and no lesser sanction. And in the PTO 65 decision, this court held, you know, applied that and to the park national, whether you want to look at the park national plaintiffs who, as we believe the plaintiffs did here did not comply with either the first PTO or the show cause order. Or you look at the destined plaintiffs who did actually file a response to the show cause order, but didn't comply with the first one. And simply through inadvertence, we think the same result obtains here. Mr. Hicks, is it your position that there is not contumacious conduct here? There is only a record of delay. No, your honor. I disagree with that. We think that under PTO 65, the PTO 65 decision, there is contumacious conduct because number one, if you want to look at it as the park national plaintiffs, these plaintiffs here did not comply with either PTO 66 or the show cause order. And that's the park national plaintiffs or it's contumacious conduct under PTO 65 because there was noncompliance with the first PTO 66 and inadequate reason for that, just as in the destined plaintiffs. Doesn't involve the sort of impertinence or whatever that you were talking about earlier, that it doesn't require some intentional or unwillingness to comply. It could be accidental and that can be contumacious. Is that your position? I am adopting the position of this court, which is as it has said in PTO 65, that multiple noncompliance with multiple court orders. They're the exact same situation here. First PTO and the show cause order is contumacious conduct. And the court didn't look at what the reasons were. These arguments were all made in PTO 65. But again, even if you don't accept that and you somehow distinguish this from PTO 65, these plaintiffs are in the position of the destined plaintiffs who were also found to have committed a record of contumacious conduct simply by disregarding the first PTO as here and then not have, and then not having the sort of good faith mistake that was made in Graham, which is also the case here. Okay, thank you. We have your argument. We have some time for rebuttal. I think Mr. Smith, you're first on the rebuttal. Yes, I have two minutes. Your Honor, Mason is very much the same. It's the same for both. Number one in Mason, he had attorneys that were trying to do some legal maneuvering and they received the notice. Not my client who threw it in the trash can. She'd gotten junk mail before. She was thrown in the trash can. We filed a lawsuit. There was no lawsuit filed in Mason. You look at the footnotes that they have here. Again, apropos to our case. One of them says, well, you know, he wasn't really injured that much. He was inside the boardroom. My man was outside. My client was outside getting sprayed, fighting for his life on here. He's Spanish. He's come to this country with his wife. It shouldn't be held against her. She doesn't know the intricacies of law. There's no bad faith. We have replied with 65, 66, 68. We have complied with all, all of the PTOs. And, you know, why should they even have a Rule 60 if we can't use Rule 60, which is for equity and for mistake? Rule 60 is right on. It's not discussed in Rule 60, but there is an out. It's not you're out, you're out, you're out. Mason is definitely not the same as this case. Again, the attorney received notice. She didn't receive it because she threw it away for Alvarado and didn't receive it. I can't say he's not distinguished. Again, they were trying to get back into a settlement. We're out. It's been stayed for 10 years. There's no prejudice to anyone. He can't bring it up before he brought it up in the Mason case because he said all kind of people can get in. Well, they can't get in. It's 925 people. No one's coming in. The length of the day was months, as they said in the courts, which is fine, not years. The reason for the delay was not for bad faith or anything. We have complied with everything. In fact, it shocked my conscience when he got thrown out after being in there six years and all the hard work he's done and I've done on this case. And the fact that he's 26, he's 36 now. He's got stroke issues. He's got rhinitis. He's got a list of things. I didn't know about this since 2011 when he filed the timely motion there to get into the case. So it's not like it's a surprise. He's in it. He's been in every order. He's done in the office. Your time is expired. It's your time. Your rebuttal time has expired. Counsel. Thank you. OK, we'll proceed to the next rebuttal. May it please the court. I would like to make four brief points in response to what we've heard. First, this is not a case of purposeful delay. Two facts show that that are particularly important. First of all, the court dismissal order said that Gortney and Valdivieso had responded on September 8th, 2018. That's important. September 8th was 12 days before the show cause order. Now, that was a mistake by the court. They did not serve their responses until October 11th. But it goes to show what was going on here. It was the attorney's own fault. It doesn't matter if they missed it by 75 days or 120 days. For the court, once you missed it, a tardy response was enough. That is not this circuit standard that's been in place since 1967 and has repeatedly been followed. A second very important fact is when the show cause order was issued, it listed over 100 plaintiffs who had not complied because they were, quote, not materially compliant with answering the questions. 80 of those, 80 of those BP agreed could amend, and those amended answers were compliant. In other words, 80 plaintiffs after the September 20th order were allowed to amend their PSOCs. Where's the delay from that? No delay. We're essentially in the same position as those 80 plaintiffs. They weren't going to delay the case by filing after the show cause order. We weren't going to delay the case by filing after the show cause order. It's important to note BP has never said our responses were not adequate. They had them. They talked about them in their objections, but they never said they were inadequate. They have the information. And on delay, the Park National case is different because of the order itself, ordering the mediation for the court. That's for the benefit of the court, and there they did not register. We did register. Second, on sanctions, this idea of this hearing in front of the judge, Judge Haynes asked about that. That's not my idea. That's Judge Barbier's idea. He has done that in PTO 68, and all I'm saying is that was a really good idea. That's a really good idea for a way to sanction somebody. Now, I went through those hurriedly, so let me say it just quickly one more time. The third condition is a condition. Thrasher says you can have a condition to reinstatement, and that condition here would be that there's a warning. But the warning says explicitly you agree I don't have to comply with those three dismissal standards in the future. You miss another deadline, you're out. That's three strikes. You're out. We don't have to do anything further. The last point on sanctions is this is, therefore, more than just a warning. Ten seconds, hopefully, on this is different even though it's an MDL. The court said in Graham, special deference, yet, yet, yet you still have to follow these three standards because this is an extreme sanction and your discretion is limited. In conclusion, this court has – may I conclude, Your Honor? You may. This court has never affirmed a dismissal that was based on a mistake by a lawyer in late filing a response to an order. BP's unforgiving break-new-ground approach that focuses only on whether it's new finds no basis in the law and would create a conflict in this circuit. We request that you hold that the trial court, which has done really many great things in this MDL, was led astray by BP's standard of tardiness and created manifest error when it didn't follow Fifth Circuit standards and gave a death sentence to these innocent plaintiffs' lawsuits. Thank you, Your Honor. Thank you. We have your argument. This concludes the arguments for today. This case is submitted. We appreciate you all appearing in this unusual format, and thank you. Thank you for your arguments today, counsel. Thank you.